UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT – NEW HAVEN

| | |
|---|---|
| In re:  Michael Henry Lotto | : CHAPTER 13 |
| Debtor | |
| U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for RCF 2 Acquisition Trust | |
| by its servicer, Selene Finance LP | : Case # **25-30311** |
| Movant | |
| VS. | : MOTION NO |
| Michael Henry Lotto | |
| Respondents | |
| Roberta Napolitano | |
| Trustee | :  July 15, 2025 |

**NOTICE OF CONTESTED MATTER RESPONSE DATE**

U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for RCF 2 Acquisition Trust by its servicer, Selene Finance LP (the "Movant") has filed a Motion for Relief from Stay (the "Contested Matter") with the U.S. Bankruptcy Court.  Notice is hereby given that any response to the Contested Matter must be filed with the Court no later than **AUGSUT 5, 2025**.  In the absence of a timely filed response, the proposed order in the Contested Matter **may** enter without further notice and hearing, see, 11 U.S.C. section 102(1).

Date: July 15, 2025 U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for RCF 2 Acquisition Trust by its servicer, Selene Finance LP

*/s Jessica L. Braus*
Jessica L. Braus - (Atty for the "Movant")
Glass & Braus – Bar # ct00533
25 Lindbergh Street
Fairfield, CT 06824

*Pursuant to Federal Rule of Bankruptcy Procedure 9006(f), if service is made by mail, three days are added after the response date set in this notice.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT – NEW HAVEN

| | |
|---|---|
| In re:  Michael Henry Lotto | : CHAPTER 13 |
| Debtor | |
| | |
| U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for RCF 2 Acquisition Trust | |
| by its servicer, Selene Finance LP | : Case # **25-30311** |
| Movant | |
| | |
| VS. | : MOTION NO |
| | |
| Michael Henry Lotto | |
| Respondents | |
| | |
| Roberta Napolitano | |
| Trustee | :  July 15, 2025 |

**CERTIFICATION**

In accordance with the applicable provisions of the Federal Rules of Bankruptcy Procedure 2002 and 7004, the undersigned certifies that on the 15TH day of July , 2025 the following documents were served on the U.S. Trustee and all appearing parties via the court's electronic filing system and by first class mail on the parties listed below:

1. **Documents Served:**

    1. **Motion for Relief**

    2. **Proposed Order**

    3. **Notice of Contested Matter**

2. <u>Parties Served Via First Class Mail:</u>

**Michael Henry Lotto**
**9 N BANK ST**
**NEW HAVEN   Connecticut 06511**

By _/s Jessica L. Braus_
Jessica L. Braus –
Attorney for the Movant
Glass & Braus – Bar # ct00533
25 Lindbergh Street
 Fairfield, CT 06824

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT – NEW HAVEN

| | |
|---|---|
| In re:  Michael Henry Lotto<br>             Debtor | : CHAPTER 13 |
| U.S. Bank Trust National Association, not in its individual capacity<br>but solely as owner trustee for RCF 2 Acquisition Trust<br>             by its servicer, Selene Finance LP<br>Movant | : Case # **25-30311** |
| VS. | : MOTION NO |
| Michael Henry Lotto<br>             Respondents | |
| Roberta Napolitano<br>Trustee | :  July 10, 2025 |

**<u>MOTION FOR RELIEF</u>**

1.    The Movant, U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for RCF 2 Acquisition Trust by its servicer, Selene Finance LP, a creditor of the above captioned bankruptcy proceeding, is the holder of a first mortgage on the premises owned by debtor, Michael Henry Lotto a/k/a Michael Lotto and located at **9 N BANK ST, NEW HAVEN, Connecticut 06511.**

2.    A fixed/adjustable rate note dated June 12, 2003 was executed by Michael Lotto in favor of Washington Mutual Bank, FA in the amount of $319,964.00.  Said note was secured by a mortgage executed by Michael Lotto to Washington Mutual Bank, FA by instrument dated June 12, 2003 and recorded in Volume 6460 at Page 148 of the New Haven Land Records.  Said mortgage was ultimately assigned to the movant, U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for RCF 2 Acquisition Trust.  ***The Movant is the***

***holder of the note.***    By virtue of being the holder of the note, the Movant has the right to foreclose.

3.    On his Schedule A/B, Debtor claims the value of this subject property is **$650,000.00.**

5.    The Movant's debt as of July 8, 2025 was $477,351.81.

6.  Upon information and belief, the debtor has not made the post- petition mortgage payments due for May 1, 2025, June 1, 2025, and July 1, 2025 and the loan is due for September 1, 2018.

7.  There is cause.  If the Movant is not granted relief, it may suffer irreparable harm.

8.  Movant seeks relief from the automatic stay under 11 U.S.C. section 362(d)(1) of the Bankruptcy Code so that it may commence and/or continue with a foreclosure action (including but not limited to offering loss mitigation options to the borrower) in state court against the debtor and the property located **9 N BANK ST, NEW HAVEN, Connecticut 06511** and a waiver of Rule 4001(a)(3).

WHEREFORE, SAID MOVANT RESPECTFULLY MOVES:

That relief from the automatic stay imposed by Bankruptcy Code Section 362(a) be modified pursuant to 11 U.S.C. section 362(d) (1) to allow Movant to commence and/or continue with a foreclosure action (including loss mitigation options) against the Debtor and property located at **9 N BANK ST, NEW HAVEN, Connecticut 06511** and further seeks a waiver of Rule 4001(a) (3).

THE MOVANT,

By_____ */s/ Jessica L. Braus*
        Jessica L. Braus, Esq.
        Attorney for the Movant
        Glass & Braus, LLC
        25 Lindbergh Street
        Fairfield, CT 06824
        Tel. No. (203) 371-2213
        Bar # ct00533

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT – NEW HAVEN

In re:  Michael Henry Lotto                                  : CHAPTER 13
              Debtor

U.S. Bank Trust National Association, not in its individual capacity
but solely as owner trustee for RCF 2 Acquisition Trust
              by its servicer, Selene Finance LP              : Case # **25-30311**
Movant

VS.                                                          : MOTION NO

Michael Henry Lotto
              Respondents

Roberta Napolitano
Trustee                                                      :


ORDER GRANTING RELIEF FROM STAY

U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee
for RCF 2 Acquisition Trust by its servicer, Selene Finance LP (the "Movant") filed a Motion for
Relief from Stay (the "Motion"), ECF No. _____.  After notice and a hearing see 11 U.S.C.
§102(1) and in compliance with the Court's Contested Matter Procedure, and it appearing that
the relief sought in the Motion should be granted, it is hereby

          ORDERED, that the automatic stay provided in 11 U.S.C. § 362(a) is modified pursuant
to 11 U.S.C. § 362(d)(1) to permit the Movant and/or their successors and assignees, to exercise
their rights, if any, with respect to real property known **9 N BANK ST, NEW HAVEN,
Connecticut 06511 in** accordance with applicable non-bankruptcy law.

And it is FURTHER ORDERED, that to the extent there exists a co-debtor, the automatic stay
pursuant to 11 U.SC. § 362(a) and the twenty-one (21) day stay pursuant to Fed.R.Bankr.P.
4001(a)(3) are modified to allow the Movant to enforce its interests in the real property against
such co-debtor.

Connecticut Local Form Relief From Stay Worksheet-Real Estate                                    (08/22/2019)

## RELIEF FROM STAY WORKSHEET-REAL ESTATE

☐ Movant believes it is not necessary to complete the information in the worksheet because:

I _____~~Christine Le~~_____ **Bankruptcy Specialist**_____

(Name and Title)

U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT
SOLELY AS OWNER TRUSTEE FOR RCF 2 ACQUISITION TRUST by its servicer, Selene Finance LP

(Name of Organization/Corporation/ Moving Party) (hereinafter, "Movant") hereby declare (or certify, verify, or state) as follows:

### BACKGROUND INFORMATION

1. Real property address which is the subject of this motion:
   9 N BANK ST, NEW HAVEN, Connecticut 06511

2. Servicer Name:  Selene Finance LP

3. Date of Mortgage: 06/12/2003

4. Post-Petition payment address:  Selene Finance LP, 3501 Olympus Blvd, 5th Fl, Dallas TX 75019

5. The manner in which the movant perfected its interest in the property:
   Mortgage

6. All other material liens and encumbrances on the property:
   Discover Bank- $5779.72

### DEBT/VALUE REPRESENTATIONS

7. Total pre-petition and post-petition indebtedness of Debtor(s) to Movant at the time of filing the
   motion: $ 477,351.88     as of 7/8/25

8. Movant's estimated market value of the real property: $  650,000.00

9. Source of estimated valuation:  Debtor's schedule A/B

### STATUS OF DEBT AS OF THE PETITION DATE

10. Total pre-petition indebtedness of Debtor(s) to Movant as of petition filing date:    as of   04/04/25

    A. Amount of principal: $ 272,363.17

    B. Amount of interest: $ 51,832.87

    C. Amount of escrow (taxes and insurance): $  122,077.71

    D. Amount of forced placed insurance expended by Movant: $ 0.00

    E. Amount of Attorney's fees billed to Debtor(s) pre-petition: $ 25,484.26

    F. Amount of pre-petition late fees, if any, billed to Debtor(s): $ 0.00

11.  Contractual interest rate as of the date of the petition: 3.75%

(If interest rate is (or was) adjustable, please list the rate(s) and dates(s) the rate(s) was/were in effect on a separate sheet and attach the sheet as an exhibit to this form; please list the exhibit number here:)

N/A

12.  Only with regard to a post-petition default, explain any additional pre-petition fees, charges or amounts charged to Debtor's/Debtor's account and not listed above:

n/a

(If additional space is needed, please list the amounts on a separate sheet and attach the sheet as an exhibit to this form; please list the exhibit number here:)

N/A

## AMOUNT OF ALLEGED POST -PETITION DEFAULT (AS OF 07/08/2025)

13.  Date last payment was received: 11/12/2018 _____ (mm/dd/yyyy)

14.  Alleged total number of payments post-petition from filing of petition through payment due on

(mm/dd/yyyy): 07/01/2025 _____ - 3 payments

15.  List all post-petition payments alleged to be in default:

### SCHEDULE OF PAYMENTS THAT WERE DUE:

| Date Payment Due | Payment Amount Due Post Petition |
|---|---|
| 05/01/2025 | $ 2,954.78 |
| 06/01/2025 | $ 2,954.78 |
| 07/01/2025 | $ 2,954.78 |
| Totals: | $ 8,864.34 |

### SCHEDULE OF PAYMENTS RECEIVED:

| Date | Amount Received | Amount Applied to Principal and Interest | Amount Applied to Escrow | Late Fee Charged (if any) | Amount Applied to Legal Fees or Costs (specify) |
|---|---|---|---|---|---|
| n/a | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| Totals: | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |

16.  Amount of Movant's Attorney's fees billed to Debtor for the preparation, filing and prosecution of this motion: $ 0.00

17.  Amount of Movant's filing fee for this motion: $ 0.00

18.  Only to the extent the movant is seeking payment in the motion, the amount of other Attorney's fees billed to Debtor post-petition:

$ 0.00

19.    Only to the extent the movant is seeking payment in the motion, the amount of Movant's post-petition inspection fees:

$ 0.00

Only to the extent the movant is seeking payment in the motion, the amount of Movant's post-petition appraisal/broker's price opinion:

$ 0.00

20.    Only to the extent the movant is seeking payment in the motion, the amount of forced placed insurance or insurance provided by the Movant post-petition:

$ 0.00

21.    Only to the extent the movant is seeking payment in the motion, the amount of the sum held in suspense by Movant in connection with this contract, if applicable:

$ 0.00

22.    Only to the extent the movant is seeking payment in the motion, the amount of other post-petition advances or charges: i.e., taxes, insurance incurred by Debtor, etc.:

$ 0.00

23.    Amount and date of post-petition payments offered by the Debtor and refused by the Movant:

| $ 0.00 | Date: |
|--------|-------|

## REQUIRED ATTACHMENTS TO MOTION

The following exhibits are attached to the motion in support of the relief requested.

1.    Copies of documents that indicate Movant's interest in the subject property. For purposes of example only, a complete and legible copy of the promissory note or other debt instrument together with a complete and legible copy of the mortgage and any assignments in the chain from the original mortgagee to the current moving party.

2.    Copies of documents establishing proof of standing to bring this Motion.

3.    Copies of documents establishing that Movant's interest in the real property was perfected. For the purposes of example only, a complete and legible copy of mortgage containing the applicable recording information.

## CERTIFICATION AND DECLARATION FOR BUSINESS RECORDS

I certify that the information provided in this worksheet and/or exhibits attached to this worksheet is derived from records that were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters, were kept in the course of the regularly conducted activity; and were made by the regularly conducted activity as a regular practice.

I further certify that copies of any transactional documents attached to this worksheet as required by paragraphs 1, 2, and 3, immediately above, are true and accurate copies of the original documents, I further certify that the original documents are in movant's possession, except as follows:

I/we declare (or certify, swear, affirm, verify or state) that the foregoing is true and correct.

Executed on _____JUL 1 5 2025_____ [date]

_Christine Le_    Christine Le

[signature]

**Bankruptcy Specialist**

[title]

U.S. BANK TRUST NATIONAL ASSOCIATION, NOT
IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS
OWNER TRUSTEE FOR RCF2 ACQUISITION TRUST
by its servicer, Selene Finance LP

[servicer]

Subscribed and sworn to before me this ____JUL 15 2025____

Notary Public: [name]    Debbie Benzley

My commision expires: 12-20-2c

DEBBIE BENZLEY
Commission # HH 343297
Expires December 20, 2026

STATE OF: **FLORIDA**

COUNTY OF: **DUVAL**

_(Signature of Signer)_

 Christine Le  as authorized representative of Selene Finance LP, its

_(Printed Name of Signer)_ Bankruptcy Specialist _(Title of Signer)_

The foregoing instrument was acknowledged before me by means of physical

presence this 15th day of July (Month), 2025 (Year)

by Christine Le _(printed name of signer)_, as Bankruptcy Specialist _(title of signer)_

for Selene Finance LP.

Signature of Notary Public

DEBBIE BENZLEY
Commission # HH 343297
Expires December 20, 2026

Debbie Benzley

Printed Name of Notary Public

Notary Stamp Here:

Personally Known X ; OR Produced Identification

N/A

_(Type of identification produced)_

_State required notary block as required by State of Florida and is meant to be part of the legal document to meet state requirements._

Fill in this information to identify your case and this filing:

| Debtor 1 | **Michael** | **Henry** | **Lotto** |
|---|---|---|---|
| | First Name | Middle Name | Last Name |

| Debtor 2 | | | |
|---|---|---|---|
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: District of **Connecticut**

Case number _____

☐ Check if this is an amended filing

## Official Form 106A/B

# Schedule A/B: Property                                                    12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

| Part 1: | Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In |
|---|---|

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

☐ No. Go to Part 2.
☑ Yes. Where is the property?

**1.1**

**What is the property?** Check all that apply.

☑ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**9 N BANK ST**
Street address, if available, or other description

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $650,000.00 | $650,000.00 |

**New Haven, CT 06511-2519**
City       State       ZIP Code

**New Haven**
County

**Who has an interest in the property?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

**Describe the nature of your ownership interest** (such as fee simple, tenancy by the entireties, or a life estate), if known.

**Fee Simple**

☐ **Check if this is community property** (see instructions)

Other information you wish to add about this item, such as local property identification number: _____

Source of Value: _____

2. **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here** ...........................➔

| $650,000.00 |
|---|

| Part 2: | Describe Your Vehicles |
|---|---|

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

3. **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☐ No
☑ Yes

Fill in this information to identify your case:

| | | | |
|---|---|---|---|
| Debtor 1 | **Michael** | **Henry** | **Lotto** |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: District of     **Connecticut**

Case number (if known) _____

☐ Check if this is an amended filing

<u>Official Form 106D</u>

# Schedule D: Creditors Who Have Claims Secured by Property    12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

1. **Do any creditors have claims secured by your property?**
   ☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.
   ☑ Yes. Fill in all of the information below.

**Part 1:    List All Secured Claims**

2. **List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | Column A<br>**Amount of claim**<br>Do not deduct the value of collateral. | Column B<br>**Value of collateral that supports this claim** | Column C<br>**Unsecured portion**<br>If any |
|---|---|---|---|

| 2.1 | **Discover Bank** | Describe the property that secures the claim: | $5,779.72 | $650,000.00 | $0.00 |
|---|---|---|---|---|---|

Creditor's Name

**PO Box 30943**

Number        Street

**Salt Lake City, UT 84130**

City        State        ZIP Code

**9 N BANK ST New Haven, CT 06511-2519**

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☑ Disputed

**Who owes the debt?** Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim relates to a community debt**

Date debt was incurred    **03/17/2023**

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☑ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Last 4 digits of account number    **3   2   7   S**

| Add the dollar value of your entries in Column A on this page. Write that number here: | $5,779.72 |
|---|---|

Debtor 1    **Michael          Henry          Lotto**          Case number *(if known)* _____
                First Name       Middle Name     Last Name

| | | Column A | Column B | Column C |
|---|---|---|---|---|
| **Part 1:** | **Additional Page** | *Amount of claim* | *Value of collateral that supports this claim* | *Unsecured portion* |
| | After listing any entries on this page, number them beginning with 2.3, followed by 2.4, and so forth. | Do not deduct the value of collateral. | | If any |

| 2.2 | **RCF 2 ACQUISITION TRUST** | Describe the property that secures the claim: | **$396,176.67** | **$650,000.00** | **$0.00** |

Creditor's Name

**c/o Selene Finance LP**

| 9 N BANK ST New Haven, CT 06511-2519 |

**P.O. Box 8619**

Number        Street

**As of the date you file, the claim is:** Check all that apply.

**Philadelphia, PA 19101-8619**

City          State      ZIP Code

- ❑ Contingent
- ❑ Unliquidated
- ❑ Disputed

**Who owes the debt?** Check one.

**Nature of lien.** Check all that apply.

- ☑ Debtor 1 only
- ❑ Debtor 2 only
- ❑ Debtor 1 and Debtor 2 only
- ❑ At least one of the debtors and another
- ❑ **Check if this claim relates to a community debt**

- ☑ An agreement you made (such as mortgage or secured car loan)
- ❑ Statutory lien (such as tax lien, mechanic's lien)
- ❑ Judgment lien from a lawsuit
- ❑ Other (including a right to offset)  _____

Date debt was incurred    __06/12/2003__    Last 4 digits of account number    **3   2   4   7**

| **Add the dollar value of your entries in Column A on this page. Write that number here:** | **$396,176.67** |
| **If this is the last page of your form, add the dollar value totals from all pages. Write that number here:** | **$401,956.39** |

## Payoff Calculation Totals (PAY4/PG1)

```
                    AS-OF 07/08/25  PAYOFF CALCULATION TOTALS 07/07/25  02:43:16
NAME M   LOTTO      CONTACT NAME MICHAEL LOTTO
-------------------------------------------------------------------------------
PRINCIPAL BALANCE          272,363.17        ----------- RATE CHANGES -----------
INTEREST 07/08/25           54,498.19        INT FROM     RATE          AMOUNT
PRO RATA MIP/PMI                  .00        08/01/18 *   3.75000       54,498.19
ESCROW ADVANCE             123,338.19        07/08/25
ESCROW BALANCE                    .00
SUSPENSE BALANCE                  .00
HUD BALANCE                       .00
REPLACEMENT RESERVE               .00
RESTRICTED ESCROW                 .00
TOTAL-FEES                      60.00
ACCUM LATE CHARGES              85.48
ACCUM NSF CHARGES                 .00
OTHER FEES DUE                    .00
PENALTY INTEREST                  .00
FLAT/OTHER PENALTY FEE            .00        TOTAL INTEREST              54,498.19
CR LIFE/ORIG FEE RBATE            .00        TOTAL TO PAYOFF            477,351.81
RECOVERABLE BALANCE         27,006.78 NUMBER OF COPIES: 1    PRESS PF1 TO PRINT
                                             TOTAL PAGE 2                     .00
MULTIPLE IR CHANGE PERIODS CROSSED
-------------------------------------------------------------------------------
```

| Loan Number | |
|---|---|
| Borrower | Michael Henry Lotto |
| Payments in POC (Arrears details) | Principal & interest due is $77,937.92 Prepetition fees due is $25484.26; Escrow deficiency is $122077.71; Projected escrow shortage is $9858.85; less funds on hand 0.0 Total prepetition arrearage is $235358.74 |
| Case Number | 25-30311 |
| Filing Date | 4/4/2025 |
| 1st Post Due Date | 5/1/2025 |

**POST-PETITION PAYMENT CHANGES**

| EFFECTIVE | 05/01/25 | | | | | |
|---|---|---|---|---|---|---|
| AMOUNT | 2954.78 | | | | | |

| Date Received | Amount Received | Payment Amount Due | To/From Suspense | Suspense Balance | Due Date | Comments |
|---|---|---|---|---|---|---|
| | | | | 0.00 | | |
| | | | 0.00 | 0.00 | | |
| | | | 0.00 | 0.00 | | |
| | | | 0.00 | 0.00 | | Next due 05/01/2025 |
| | | | 0.00 | 0.00 | | |
| | | | 0.00 | 0.00 | | |
| | | | 0.00 | 0.00 | | |
| | | | 0.00 | 0.00 | | |
| | | | 0.00 | 0.00 | | |

| Arrears Due: | 5/1/2025 | 2954.78 |
|---|---|---|
| | 6/1/2025 | 2954.78 |
| | 7/1/2025 | 2954.78 |
| | | |
| | | |
| Less suspense: | | 0.00 |
| **TOTAL:** | | **$8,864.34** |

FILED

**U.S. Bankruptcy Court**
**District of Connecticut**

6/9/2025

**Pietro Cicolini, Clerk**

**Fill in this information to identify the case:**

Debtor 1    Michael Lotto

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court    **District of Connecticut**

Case number:   **25-30311**

Official Form 410

## Proof of Claim

04/25

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

### Part 1:   Identify the Claim

| | |
|---|---|
| **1. Who is the current creditor?** | U.S. Bank Trust National Association, not in its i<br><br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor |
| **2. Has this claim been acquired from someone else?** | ☑ No<br>☐ Yes. From whom? |
| **3. Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**    **Where should payments to the creditor be sent?** (if different)<br><br>U.S. Bank Trust National Association, not in its i<br><br>Name                 Name<br><br>Selene Finance LP<br>3501 Olympus Blvd, Suite 500<br>Dallas, TX 75019<br><br>Contact phone _____    Contact phone _____<br><br>Contact email _____    Contact email _____<br><br>Uniform claim identifier (if you use one):<br>_____ |
| **4. Does this claim amend one already filed?** | ☑ No<br>☐ Yes. Claim number on court claims registry (if known) _____    Filed on _____<br>                                                         MM / DD / YYYY |
| **5. Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No<br>☐ Yes. Who made the earlier filing? _____ |

**Part 2:   Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☐ No<br>☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:   ___3247___ |

---

7. **How much is the claim?**   $   471758.01

**Does this amount include interest or other charges?**
☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

---

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

money loaned

---

9. **Is all or part of the claim secured?**

☐ No
☑ Yes. The claim is secured by a lien on property.
  **Nature of property:**
  ☑ Real estate.   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim.*
  ☐ Motor vehicle
  ☑ Other. Describe:   9 North Bank Street, New Haven, CT 0651

  **Basis for perfection:**   Mortgage/Deed of Trust

  Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

  **Value of property:**   $ _____

  **Amount of the claim that is secured:**   $   471758.01

  **Amount of the claim that is unsecured:**   $   0.00   (The sum of the secured and unsecured amounts should match the amount in line 7.)

  **Amount necessary to cure any default as of the date of the petition:**   $   235358.74

  **Annual Interest Rate** (when case was filed)   3.75   %

  ☑ Fixed
  ☐ Variable

---

10. **Is this claim based on a lease?**

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____

---

11. **Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property:   _____

---

Official Form 410          Proof of Claim          page 2

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No<br>☐ Yes. *Check all that apply:* | Amount entitled to priority |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| | ☐ Up to $3,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| | ☐ Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies | $ _____ |
| | * Amounts are subject to adjustment on 4/01/28 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date     6/9/2025

MM / DD / YYYY

/s/  /s/ Francisco Cardona

Signature

Print the name of the person who is completing and signing this claim:

| Name | /s/ Francisco Cardona |
|---|---|
| | First name     Middle name     Last name |
| Title | Authorized Agent for Secured Creditor |
| Company | Robertson, Anschutz, Schneid, Crane & Partners |
| | Identify the corporate servicer as the company if the authorized agent is a servicer |
| Address | 13010 Morris Rd, Suite 450 |
| | Number   Street |
| | Alpharetta, GA 30004 |
| | City   State   ZIP Code |
| Contact phone | 470–321–7112     Email   fcardona@raslg.com |

| Fill in this information to identify the case: |
|---|

Debtor 1 __Michael Henry Lotto__

Debtor 2 _____
(Spouse, if filing)

United States Bankruptcy Court for the District of CONNECTICUT

Case number __25-30311_____

# Official Form 410
# Proof of Claim

04/25

**Read the instructions before filling out this form.** Use this form to make a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| **Part 1:** | **Identify the Claim** |
|---|---|

| 1. | What is the current creditor? | U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for RCF 2 Acquisition Trust |
|---|---|---|

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

| 2. | Has this claim been acquired from someone else | [X] No<br>[ ] Yes.  From whom? _____ |
|---|---|---|

| 3. | Where should notices and payments to the creditor be sent?<br>Federal Rule of Bankruptcy Procedure (FRBP) 2002 (g) | **Where should notices to the creditor be sent?**<br><br>Selene Finance LP<br>Name<br><br>3501 Olympus Blvd, Suite 500<br>Number     Street<br><br>Dallas,  TX  75019<br>City          State          ZIP Code<br><br><br>Contact phone<br><br>Contact email | **Where should payments to the creditor be sent?** (if different)<br><br>Selene Finance LP<br>Name<br><br>3501 Olympus Blvd, Suite 500<br>Number     Street<br><br>Dallas  TX  75019<br>City          State          ZIP Code<br><br><br>Contact phone<br><br>Contact email |
|---|---|---|---|

Uniform claim identifier (if you use one)

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

| 4. | Does this claim amend one already filed? | [X] No<br>[ ] Yes.   Claim number on court claim registry (if known) _____ | Filed on _____<br>MM/DD/YYYY |
|---|---|---|---|

| 5. | Do you know if anyone else has filed a proof of claim for this claim? | [X] No<br>[ ] Yes.   Who made the earlier filing? _____ |
|---|---|---|

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

| 6. | **Do you have any number you use to identify the debtor** | [ ] No<br>[X] Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: <u>3247</u> |
|---|---|---|

| 7. | **How much is the claim?** | $   <u>471,758.01</u>       Does this amount include interest or other charges?<br>[ ] No<br>[X] Yes.     Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(a) |
|---|---|---|

| 8. | **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br><br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br><br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br><u>  MONEY LOANED  </u> |
|---|---|---|

| 9. | **Is all or part of the claim secured?** | [ ] No<br>[X] Yes.   The claim is secured by a lien on property.<br><br>**Nature of property:** <u>9 NORTH BANK STREET, NEW HAVEN, CT 06511</u><br><br>[X] Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this Proof of Claim.<br>[ ]     Motor vehicle<br>[ ]     Other. Describe:<br><br>**Basis for perfection:** <u>Mortgage/Deed of Trust</u><br><br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:**<br><br>**Amount of the claim that is secured:**    $<u>471,758.01</u><br><br>**Amount of the claim that is unsecured:**    $_____ (The sum of the secured and unsecured amounts should match the amount in line 7)<br><br>**Amount necessary to cure any default as of the date of the petition:**    $235,358.74<br><br>**Annual Interest Rate** (when case was filed) <u>3.750</u>%<br>[X]    Fixed<br>[ ]    Variable |
|---|---|---|

| 10. | **Is this claim based on a lease?** | [X] No<br>[ ] Yes. **Amount necessary to cure any default as of the date of the petition.**    $_____ |
|---|---|---|

| 11. | **Does this claim involve a right to setoff?** | [X] No<br>[ ] Yes. Identify the property _____ |
|---|---|---|

| 12. | **Is all or part of the claim entitled to priority under 11 U.S.C. §507(a)?**  A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority | [X] No [ ] Yes. *Check one:* | **Amount entitled to priority** |
|---|---|---|---|
| | | [ ] Domestic support obligations (including alimony and child support) under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). | $_____ |
| | | [ ] Up to $3,800* of deposits toward purchase, lease or rental of property or services for personal, family, or household use. 11 U.S.C. §507(a)(7). | $_____ |
| | | [ ] Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. §507(a)(4). | $_____ |
| | | [ ] Taxes or penalties owed to governmental units. 11 U.S.C. §507(a)(8). | $_____ |
| | | [ ] Contributions to an employee benefit plan.11 U.S.C. §507(a)(5). | $_____ |
| | | [ ] Other. Specify subsection of 11 U.S.C. §507(a)(__) that applies. | $_____ |
| | | *  Amount are subject to adjustment on 4/01/28 and every 3 years after that for cases begun on or after the date of adjustment | |

---

**Part 3:   Sign Below**

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box*

[ ]  I am the creditor
[X]  I am the creditor's attorney or authorized agent.
[ ]  I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
[ ]  I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculation the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date ___June 3, 2025_____
                        MM/DD/YYYY

/s/ Francisco Cardona
     Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Francisco Cardona |
| | First Name         Middle Name         Last Name |
| Title | Authorized Agent for Secured Creditor |
| Company | Robertson, Anschutz, Schneid, Crane & Partners, PLLC |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | 13010 Morris Road, Suite 450 |
| | Number         Street |
| | Alpharetta, GA 30004 |
| | City      State      ZIP Code |
| Contact Phone | 470-321-7112      Email   fcardona@raslg.com |

[ ] Noteholder is the owner of the note.
[X] Noteholder is the original mortgagee or beneficiary or assignee of the security instrument for the referenced loan. Noteholder directly or through an agent has possession of the promissory note and the promissory note is either made payable to Noteholder or has been duly endorsed.
[ ] Noteholder is the original mortgagee or beneficiary or assignee of the security instrument for the referenced loan. Noteholder directly or through an agent, has possession of the promissory note and will enforce the promissory note as transferee in possession.
[ ] Noteholder is the original mortgagee or beneficiary or assignee of the security instrument for the referenced loan. Noteholder is unable to find the promissory note and will seek to prove the promissory note through the filing of a lost note affidavit.
[ ] Noteholder is the successor trustee and transferee in possession of the security instrument for the referenced loan.

## Mortgage Proof of Claim Attachment

**(12/23)**

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

| Part 1: Mortgage and Case Information | | Part 2: Total Debt Calculation | | Part 3: Arrearage as of Date of the Petition | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|---|
| Case number: | 25-30311 | Principal balance: | $272,363.17 | Principal Due: | $29,528.69 | Principal & interest: | $1,101.55 |
| | | | | Interest Due: | $48,409.23 | | |
| Debtor 1: | Michael Henry Lotto | Interest due: | $51,832.87 | Prepetition fees due: | $25,484.26 | Monthly escrow: | $1,853.23 |
| Debtor 2: | | Fees, costs due: | $25,484.26 | Escrow deficiency for funds advanced: | $122,077.71 | Private mortgage insurance: | |
| Last 4 digits to identify: | 3247 | Escrow deficiency for funds advanced: | $122,077.71 | Projected escrow shortage: | $9,858.85 | Total monthly payment: | $2,954.78 |
| Creditor: | U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for RCF 2 Acquisition Trust | Less total funds on hand: - | $0.00 | Less funds on hand: | $0.00 | | |
| Servicer: | Selene Finance LP | Total debt: | $471,758.01 | Total prepetition arrearage: | $235,358.74 | | |
| Fixed accrual/daily simple interest/other: | Fixed | | | | | | |





**FIXED/ADJUSTABLE RATE NOTE**
(1 Year Treasury Index - Rate Caps)

THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| June 12, 2003 | ALIQUIPPA | Pennsylvania |
|---|---|---|
| | (City) | (State) |

9 NORTH BANK STREET, NEW HAVEN, CT 06511
(Property Address)

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ _319,964.00_ (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is _Washington Mutual Bank, FA_. I will make all payments under this Note in the form of cash, check or money order. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of _4.750_ %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS

(A) Time and Place of Payments

I will pay Principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on August 1st, 2003 , I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on July 1st, 2033 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make my monthly payments at _LOAN SERVICE, 9451 CORBIN AVE,_ _NORTHRIDGE, CA 91324_ or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $_1,669.08_. This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid Principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

Page 1 of 6

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of ___July, 2008___ , and on that day every 12th month thereafter. Each date on which my adjustable interest rate could change, is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of 1 year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding ___Two & Seventy-Five-Hundredths___ percentage points ( _2.750_ %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than _6.750_ % or less than _2.750_ %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two percentage points (2.0%) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than _10.750_ %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notices of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

### (G) Failure to Make Adjustments

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold Note Holder responsible for any damages to me which may result from Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid Principal.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder

in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use all of my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then; (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

Miscellaneous Fees: I understand that the Note Holder will also charge a return item charge in the event a payment that I make in connection with repayment of this loan is not honored by the financial institution on which it is drawn. The current fee is $ __15.00__ . Lender reserves the right to change the fee from time to time without notice except as may be required by law.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of __Fifteen__ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be __5.000__ % of my overdue payment of Principal and interest. I will pay this late charge promptly, but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by Applicable Law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

(A) UNTIL MY INITIAL FIXED INTEREST RATE CHANGES TO AN ADJUSTABLE INTEREST RATE UNDER THE TERM STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL READ AS FOLLOWS:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by Applicable law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in

accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) WHEN MY INITIAL FIXED INTEREST RATE CHANGES TO AN ADJUSTABLE INTEREST RATE UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT AS DESCRIBED IN SECTION 11(A) ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD READ AS FOLLOWS:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by Applicable Law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 12. MISCELLANEOUS PROVISIONS

In the event the Note Holder at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical or ministerial mistake, calculation error, computer error, printing error or similar error (collectively "Errors"), I agree, upon notice from the Note Holder, to reexecute any Loan Documents that are necessary to correct any such Errors and I also agree that I will not hold the Note Holder responsible for any damage to me which may result from any such Errors.

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Note Holder delivers to me an indemnification in my favor, signed by the Note Holder, then I will sign and deliver to the Note Holder a Loan Document identical in form and content which will have the effect of the original for all purposes.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

x _____
MICHAEL LOTTO

Pay to the order of

_____
        Without Recourse
Washington Mutual Bank, FA

_____
Jess Almanza, AVP

**VOL 6460 PAGE 148**

AFTER RECORDING RETURN TO:

**Service Link, L.P.** <span style="background:black">▮▮▮▮▮</span>
4000 Industrial Boulevard
Aliquippa, PA 15001
800•439•5451

———————— [Space Above This Line For Recording Data] ————————
SERVICE LINK

## OPEN-END MORTGAGE DEED

<span style="background:black">▮▮▮▮▮▮▮▮▮</span>

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated _____ June 12, 2003 _____, together with all Riders to this document.
**(B) "Borrower"** is ___MICHAEL LOTTO___

_____
_____

Borrower is the mortgagor under this Security Instrument.
**(C) "Lender"** is _____ Washington Mutual Bank, FA, a federal association _____.
Lender is a _____ Bank _____ organized and existing under the laws
of _____ United States of America _____ . Lender's address is:
_____ 400 East Main Street Stockton, CA 95290 _____.
Lender is the mortgagee under this Security Instrument.
**(D) "Note"** means the promissory note signed by Borrower and dated ___ June 12, 2003 ___.
The Note states that Borrower owes Lender ___Three Hundred Nineteen Thousand Nine Hundred Sixty-Four & 00/100___

Dollars (U.S. $___ 319,964.00 ___) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than ___ July 1, 2033 ___.
**(E) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

## VOL 6460 PAGE 149

**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

- [X] Adjustable Rate Rider
- [ ] Graduated Payment Rider
- [ ] Balloon Rider
- [ ] Other(s) [specify]

- [ ] Condominium Rider
- [ ] Planned Unit Development Rider
- [ ] Rate Improvement Rider

- [ ] 1-4 Family Rider
- [ ] Biweekly Payment Rider .
- [ ] Second Home Rider

**(H) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(I) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(J) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(K) "Escrow Items"** means those items that are described in Section 3.

**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds, whether by way of judgment, settlement or otherwise, paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument the Note; and (iii) the performance of all agreements of Borrower to pay fees and charges arising out of the Loan whether or not herein set forth. For this purpose, Borrower, in consideration of this debt does hereby grant and convey to Lender and

CONNECTICUT

Lender's successors and assigns, the following described property located in _____
__New Haven_____ County, Connecticut:

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

which currently has the address of __9 NORTH BANK STREET_____ ,
                                                                      [Street]

_____NEW HAVEN_____ , Connecticut ____06511___ ("Property Address"):
         [City]                                    [Zip Code]

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic

# Exhibit "A"
# Legal Description

All that certain parcel of land situated in the Town and County of New Haven, State of Connecticut, being known and designated as #9-11 North Bank Street, and bounded: Southerly: by North Bank Street, 40 feet; Westerly: by land now or formerly of Joseph Lawrence, 1227 feet; Northerly: by land now or formerly of James H. Woodhouse, 40 feet; Easterly: by land now or formerly of John Pyrdol, 127 feet.

Tax ID ██████████████

VOL 6 4 6 0 PAGE 1 5 2

Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke

CONNECTICUT

VOL6460 PAGE 153

the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Lender may purchase such insurance from or through any company acceptable to Lender including, without limitation, an affiliate of Lender, and Borrower acknowledges and agrees that Lender's affiliate may receive consideration for such purchase. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such polices shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

Borrower hereby absolutely and irrevocably assigns to Lender all of Borrower's right, title and interest in and to all proceeds from any insurance policy (whether or not the insurance policy was required by Lender) that are due, paid or payable with respect to any damage to such property, regardless of whether the insurance policy is established before, on or after the date of this Security Instrument. By absolutely and irrevocably assigning to Lender all of Borrower's rights to receive any and all proceeds from any insurance policy, Borrower hereby waives, to the full extent allowed by law, all of Borrower's rights to receive any and all of such insurance proceeds.

Borrower hereby absolutely and irrevocably assigns to Lender all of Borrower's right, title and interest in and to (a) any and all claims, present and future, known or unknown, absolute or contingent, (b) any and all causes of action, (c) any and all judgments and settlements (whether through litigation, mediation, arbitration or otherwise), (d) any and all funds sought against or from any party or parties whosoever, and (e) any and all funds received or receivable in connection with any damage to such property, resulting from any cause or causes whatsoever,

VOL 6460 PAGE 155

including but not limited to, land subsidence, landslide, windstorm, earthquake, fire, flood or any other cause.

Borrower agrees to execute, acknowledge if requested, and deliver to Lender, and/or upon notice from Lender shall request any insurance agency or company that has issued any insurance policy to execute and deliver to Lender, any additional instruments or documents requested by Lender from time to time to evidence Borrower's absolute and irrevocable assignments set forth in this paragraph.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, or remove or demolish any building thereon, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in good condition and repair in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property in good and workmanlike manner if damaged to avoid further

deterioration or damage. Lender shall, unless otherwise agreed in writing between Lender and Borrower, have the right to hold insurance or condemnation proceeds. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause. Lender does not make any warranty or representation regarding, and assumes no responsibility for, the work done on the Property, and Borrower shall not have any right to rely in any way on any inspection(s) by or for Lender or its agent. Borrower shall be solely responsible for determining that the work is done in a good, thorough, efficient and workmanlike manner in accordance with all applicable laws.

Borrower shall (a) appear in and defend any action or proceeding purporting to affect the security hereof, the Property or the rights or powers of Lender or Trustee; (b) at Lender's option, assign to Lender, to the extent of Lender's interest, any claims, demands, or causes of action of any kind, and any award, court judgement, or proceeds of settlement of any such claim, demand or cause of action of any kind which Borrower now has or may hereafter acquire arising out of or relating to any interest in the acquisition or ownership of the Property. Lender and Trustee shall not have any duty to prosecute any such claim, demand or cause of action. Without limiting the foregoing, any such claim, demand or cause of action arising out of or relating to any interest in the acquisition or ownership of the Property may include (i) any such injury or damage to the Property including without limit injury or damage to any structure or improvement situated thereon, (ii) or any claim or cause of action in favor of Borrower which arises out of the transaction financed in whole or in part by the making of the loan secured hereby, (iii) any claim or cause of action in favor of Borrower (except for bodily injury) which arises as a result of any negligent or improper construction, installation or repair of the Property including without limit, any surface or subsurface thereof, or of any building or structure thereon or (iv) any proceeds of insurance, whether or not required by Lender payable as a result of any damage to or otherwise relating to the Property or any interest therein. Lender may apply, use or release such monies so received by it in the same manner as provided in Paragraph 5 for the proceeds of insurance.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting

and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage

insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is

VOL 6460 PAGE 159

less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

·      If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgement, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgement, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. This Security Instrument cannot be changed or modified except as otherwise provided herein or by agreement in writing signed by Borrower, or any Successor in Interest to Borrower and Lender. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successor in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy. No waiver by Lender of any right under this Security Instrument shall be effective unless in writing. Waiver by Lender of any right granted to Lender under this Security Instrument or of any provision of this Security Instrument as to any transaction or occurrence shall not be deemed a waiver as to any future transaction or occurrence.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by

Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Borrower shall pay such other charges as Lender may deem reasonable for services rendered by Lender and furnished at the request of Borrower, any Successor in interest to Borrower or any agent of Borrower. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the

conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgement enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument,

VOL 6460 PAGE 162

and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substance in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use, or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

VOL 6460 PAGE 163

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and foreclosure or sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in court the non-existence of a default or any other defense of Borrower to acceleration and foreclosure or sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke any of the remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. If Borrower or any successor in interest to Borrower files (or has filed against Borrower or any successor in interest to Borrower) a bankruptcy petition under Title II or any successor title of the United States Code which provides for the curing of prepetition default due on the Note, interest at a rate determined by the Court shall be paid to Lender on post-petition arrears.

23. Release. Upon payment and discharge of all sums secured by this Security Instrument, this Security Instrument shall become null and void and Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is not prohibited by Applicable Law.

24. Waivers. Borrower waives all rights of homestead exemption in, and statutory redemption of, the Property and all right of appraisement of the Property and relinquishes all rights of curtesy and dower in the Property.

25. Future Advances. Lender is specifically permitted, at its option and in its discretion, to make additional loans and future advances under this Security Instrument as contemplated by Section 49-2(c) of the Connecticut General Statutes, and shall have all rights, powers and protections allowed thereunder.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

WITNESS

x _____
                                          WITNESS

x _____
                                          WITNESS

CONNECTICUT

Page 15 of 16

VOL 6460 PAGE 164

X _____
MICHAEL LOTTO

──────────── (Space Below This Line For Acknowledgment) ────────────

STATE OF CONNECTICUT, ~~New York~~ _____
County ss: NY

The foregoing instrument was acknowledged before me this **June 10, 2003**
                                                                (date)

by _____

MAURICE HALLIVIS
Notary Public, State of New York
No. ████████
Qualified in New York County
Commission Expires May 26, 2006

                                        (person acknowledging) _____

                                        Commissioner of the Superior Court
                                        Notary Public

          (Official Seal)

                                My Commission expires: **May 26, 2006**

CONNECTICUT                        Page 16 of 16

## FIXED/ADJUSTABLE RATE RIDER
### (1 Year Treasury Index - Rate Caps)

████████████

THIS FIXED/ADJUSTABLE RATE RIDER is made this __12th__ day of __June, 2003__, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to __Washington Mutual Bank, FA__ ("Lender") of the same date and covering the property described in the Security Instrument and located at:

__9 NORTH BANK STREET, NEW HAVEN, CT 06511__
(Property Address)

**THE NOTE PROVIDES FOR A CHANGE IN THE BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial fixed interest rate of __4.750__ %. The Note also provides for a change in the initial fixed rate to an adjustable interest rate, as follows:

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates
The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of __July, 2008__, and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

### (B) The Index
Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent

████████████

Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two & Seventy-Five-Hundredths                                    percentage points (    2.750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than    6.750    % or less than    2.750    %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points (2.0%) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than    10.750 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, and any information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Failure to Make Adjustments**

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold Note Holder responsible for any damages to me which may result from Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial Prepayment of unpaid "Principal."

Page 2 of 4

VOL 6460 PAGE 167

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in section A above, section 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest In Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in section A above, Section 18 of the Security Instrument described in section B1 above shall then cease to be in effect, and the provisions of Section 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be

VOL 6460 PAGE 168

impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

X _____
MICHAEL LOTTO

CITY CLERK
CITY OF NEW HAVEN

03 JUN 23 PH 12:51

Page 4 of 4

After Recordation Return To:
JPMorgan Chase Bank, NA
C/O Nationwide Title Clearing,
Inc. 2100 Alt. 19 North
Palm Harbor, FL 34683

Loan █████



VOL 9121 PG 240
03/13/2014 12:29:42 PM
1 Pages
ASSIGNMENT

Michael B. Smart City Clerk

## ASSIGNMENT OF MORTGAGE

Contact JPMORGAN CHASE BANK, N.A. for this instrument 780 Kansas Lane, Suite A, Monroe, LA 71203, telephone # (866) 756-8747, which is responsible for receiving payments.

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA, WHOSE ADDRESS IS 700 Kansas Lane, MC █████ MONROE, LA, 71203, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Mortgage with all interest secured thereby, all liens, and any rights due or to become due thereon to JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, WHOSE ADDRESS IS 700 KANSAS LANE, MC █████ MONROE, LA 71203, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).

Said Mortgage bearing the date 06/12/2003, made by MICHAEL LOTTO to WASHINGTON MUTUAL BANK, FA, and recorded in the Land Records of the Town of NEW HAVEN, State of Connecticut, in Volume 6460, at Page 148, to which reference may be had.

This Assignment is made without recourse, representation or warranty, express or implied, by the FDIC in its corporate capacity or as Receiver.

IN WITNESS WHEREOF, FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA, by JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, its Attorney-in-Fact has hereunto set its hand on 03/07/2014 (MM/DD/YYYY).

By: _____
     Joshua M Jackson
     Vice President

Signed and Delivered in the presence of:

_____  Witness
Pam Stewart

_____  Witness
Carl Briskell

STATE OF LOUISIANA, PARISH OF OUACHITA
On 03/07/2014 (MM/DD/YYYY), before me appeared Joshua M Jackson, to me personally known, who did say that he/she/they is/are the Vice President of JPMORGAN CHASE BANK, NATIONAL ASSOCIATION as Attorney-in-Fact for FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA and that the instrument was signed on behalf of the corporation (or association), by authority from its board of directors, and that he/she/they acknowledged the instrument to be the free act and deed of the corporation (or association).

_____
Todd C Sylvester
Notary Public - State of LOUISIANA
Commission expires: Upon My Death

TODD C SYLVESTER
NOTARY PUBLIC █████
OUACHITA PARISH, LA
MY COMMISSION IS FOR LIFE

Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

03/13/2014 12:29:42 PM
Michael B. Smart City Clerk
City of New Haven



VOL 9388 PG 101
02/26/2016 01:52:43 PM
2 Pages
ASSIGNMENT

Michael B. Smart City Clerk

After recording please return to:
**PEIRSONPATTERSON, LLP**
**ATTN: RECORDING DEPT.**
**13750 OMEGA ROAD**
**DALLAS, TX 75244-4505**

——————————————— *[Space Above This Line For Recording Data]* ———————————————

Loan No ▮
FNMA Loan No ▮

# CONNECTICUT ASSIGNMENT OF MORTGAGE

For Value Received, JPMorgan Chase Bank, National Association, the undersigned holder of a Mortgage (herein "Assignor") with an address at 700 Kansas Lane, MC ▮, Monroe, LA 71203 does hereby grant, sell, assign, transfer and convey, unto **FEDERAL NATIONAL MORTGAGE ASSOCIATION, ITS SUCCESSORS OR ASSIGNS**, (herein "Assignee"), whose address is 14221 Dallas Parkway, Suite 1000, Dallas, TX 75254, all beneficial interest under a certain Mortgage dated June 12, 2003 and recorded on June 23, 2003, made and executed by **MICHAEL LOTTO**, to and in favor of **WASHINGTON MUTUAL BANK, FA, A FEDERAL ASSOCIATION**, upon the following described property situated in **NEW HAVEN** City/Town, State of Connecticut:

Property Address: **9 NORTH BANK STREET, NEW HAVEN, CT 06511**

such Mortgage having been given to secure payment of **Three Hundred Nineteen Thousand Nine Hundred Sixty Four and 00/100ths ($319,964.00)**, which Mortgage is of record in Book, Volume, or Liber No. 6460, at Page 148 (or as Instrument No ▮ ), in the Office of the Town Clerk of **NEW HAVEN** City/Town, State of Connecticut.

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

Contact Federal National Mortgage Association for this instrument c/o Seterus, Inc., 14523 SW Millikan Way, #200, Beaverton, OR 97005, telephone #1-866-570-5277, which is responsible for receiving payments.

Connecticut Assignment of Mortgage
JPMorgan Chase Bank N.A. Project W3223          Page 1 of 2

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on
11-23-2015 .

WITNESSED BY:

Name   *Pearl Burch*

Name   *Suean Johnson-Ford*

Assignor:
JPMorgan Chase Bank, National Association

By: _____
Chastity N. Kennedy

Its: **Vice President**

### ACKNOWLEDGMENT

State of Louisiana                                     §
                                                      §
Parish of Ouachita                                    §

On this **23** day of **November 2015**, before me appeared Chastity N. Kennedy , to me
personally known, who, being by me duly sworn (or affirmed) did say that he/she is the
___Vice President_____, of JPMorgan Chase Bank, National Association, and that the seal affixed
to said instrument is the corporate seal of said entity and that the instrument was signed and sealed on behalf of the
said entity by authority of its board of directors and that  Chastity N. Kennedy          acknowledged the
instrument to be the free act and deed of the said entity.

_____
Signature of Officer

**WANDA INEZ KINSER**
Printed Name

**NOTARY PUBLIC**
Title of Officer

(Seal)                          My Commission Expires:  *life*

Connecticut Assignment of Mortgage
JPMorgan Chase Bank N.A. Project W3223        Page 2 of 2

02/26/2016 01:52:43 PM
Michael B. Smart City Clerk
City of New Haven

BK: 9388 PG: 102

After Recordation Return To:
Fannie Mae
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

CS Loan Number ███████
FNMA Loan Number ███████



**VOL 9814 PG 203**
02/07/2019 11:12:05 AM
1 Pages
ASSIGNMENT

Michael B. Smart City Clerk

### ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **FEDERAL NATIONAL MORTGAGE ASSOCIATION, WHOSE ADDRESS IS 5600 GRANITE PKWY, BUILDING VII, PLANO, TX 75024, (ASSIGNOR),** by these presents does convey, grant, assign, transfer and set over the described Mortgage with all interest secured thereby, all liens, and any rights due or to become due thereon to **U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR THE NRZ PASS-THROUGH TRUST II, WHOSE ADDRESS IS 60 LIVINGSTON AVENUE,** ███████ **, ST. PAUL, MN 55107, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Mortgage bearing the date 06/12/2003, made by MICHAEL LOTTO to WASHINGTON MUTUAL BANK, FA, and recorded in the Land Records of the Town of NEW HAVEN, State of Connecticut, in Vol 6460 and Page 148, to which reference may be had.

Modification: MODIFICATION 01/12/2012 BK: 8782 PG: 113.

IN WITNESS WHEREOF, FEDERAL NATIONAL MORTGAGE ASSOCIATION, by NATIONWIDE TITLE CLEARING, INC., its Attorney-in-Fact has hereunto set its hand this **06th** day of February in the year 2019.

_E. Green_

**ERCILIA GREEN**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

Signed and Delivered in the presence of:

_K. Eisele_

**KOSTADINA EISELE**
**WITNESS**

_D. Jackson_

**DYLAN JACKSON**
**WITNESS**

STATE OF FLORIDA   COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on this 06th day of February in the year 2019, by Ercilia Green as VICE PRESIDENT of NATIONWIDE TITLE CLEARING, INC. as Attorney-in-Fact for FEDERAL NATIONAL MORTGAGE ASSOCIATION, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

_Julie Martens_

**JULIE MARTENS**
**COMM EXPIRES: 5/22/2022**

JULIE MARTENS
Notary Public - State of Florida
Commission
My Comm. Expires May 22, 2022
Bonded through National Notary Assn.

Document Prepared By: Dave LaRose/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

02/07/2019 11:12:05 AM
Michael B. Smart City Clerk
City of New Haven

Recording Requested By:
**Shellpoint Mortgage Servicing**
Prepared By: **Audrey B Trumble**
**855-369-2410**
When recorded mail to:
**CoreLogic**
**P.O. Box 9232**
**Coppell, TX 75019**

Case Nbr
Ref Number
Property Address:
**9 N BANK ST**
**NEW HAVEN, CT 06511**

**VOL 10003 PG 178**
05/21/2020  11:59:28 AM
2 Pages
ASSIGNMENT

Michael B. Smart City Clerk

This space for Recorder's use

## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is **60 LIVINGSTON AVENUE,** ST. PAUL, MN 55107 does hereby grant, sell, assign, transfer and convey unto **U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE OF NRZ PASS-THROUGH TRUST X-B** whose address is **60 LIVINGSTON AVENUE,** ST. PAUL, MN 55107 all beneficial interest under that certain Mortgage described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage.

Mortgagee:              **WASHINGTON MUTUAL BANK, FA, A FEDERAL ASSOCIATION**
Borrower(s):            **MICHAEL LOTTO**
Date of Mortgage:       **6/12/2003**
Original Loan Amount:   **$319,964.00**

Recorded in **New Haven Township**, CT on: **6/23/2003**, book **6460**, page **148** and instrument number

This Mortgage has not been assigned unless otherwise stated below:

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on **5/12/2020**

**U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR THE NRZ PASS-THROUGH TRUST II BY NEWREZ LLC F/K/A NEW PENN FINANCIAL, LLC D/B/A SHELLPOINT MORTGAGE SERVICING, AS ATTORNEY IN FACT**

By: _____

**Brandon Payne, Vice President**

Witness: Jessica Delpit

Page 1 of 2

STATE OF **TX**

COUNTY OF **Dallas**

On **5/12/2020** before me, **Jessica Lynn Lykins**, a Notary Public, personally appeared **Brandon Payne, Vice President** of **U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR THE NRZ PASS-THROUGH TRUST II BY NEWREZ LLC F/K/A NEW PENN FINANCIAL, LLC D/B/A SHELLPOINT MORTGAGE SERVICING, AS ATTORNEY IN FACT** personally known to me to be the person(s) whose name(s) is/are subscribed to the within document and acknowledged to me that he/she/they of his/her/their free act and deed executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the document the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

Notary Public

Printed Name: **Jessica Lynn Lykins**

My Commission Expires : **11/15/2022**

JESSICA LYNN LYKINS
Notary Public, State of Texas
Comm. Expires 11-15-2022
Notary ID

05/21/2020  11:59:28 AM
Michael B. Smart City Clerk
City of New Haven

When Recorded Return To:
Shellpoint Mortgage Servicing
2100 Alt. 19 North
Palm Harbor, FL 34683



**VOL 10370PG 292**

04/29/2022 03:52:16 PM
2 Pages
ASSIGNMENT

Michael B. Smart City Clerk

## AFFIDAVIT OF MISSING ASSIGNMENT

The undersigned ___Kayla Stanton___ , being duly sworn deposes and states as follows:

1. That I am a ___Supervisor___ of NEWREZ LLC F/K/A NEW PENN FINANCIAL LLC D/B/A SHELLPOINT MORTGAGE SERVICING ("Affiant") having its principal place of business at 1100 VIRGINIA DRIVE, FORT WASHINGTON, PA 19034 , an officer duly authorized to make this affidavit.

2. That I have personal knowledge of the facts set forth in this Affidavit including that of NEWREZ LLC F/K/A NEW PENN FINANCIAL LLC D/B/A SHELLPOINT MORTGAGE SERVICING's business records kept in the course of its regularly conducted business activities. I have personal knowledge of NEWREZ LLC F/K/A NEW PENN FINANCIAL LLC D/B/A SHELLPOINT MORTGAGE SERVICING's procedures with respect to the safekeeping and retrieval of collateral documents and loans serviced or administered by NEWREZ LLC F/K/A NEW PENN FINANCIAL LLC D/B/A SHELLPOINT MORTGAGE SERVICING on behalf of various Mortgagees.

3. That Affiant is the servicer or attorney-in-fact for NEWREZ LLC F/K/A NEW PENN FINANCIAL LLC D/B/A SHELLPOINT MORTGAGE SERVICING ("Current Mortgagee"), who is the Mortgagee of a certain Mortgage (the "Mortgage") dated on 06/12/2003 made by MICHAEL LOTTO as Mortgagor(s) to WASHINGTON MUTUAL BANK, FA as Original Mortgagee, which Mortgage was recorded on 06/23/2003 in the office of the Recorder, Registrar or Clerk in the Town of NEW HAVEN, in the State of CT, in Vol 6460 and Page 148.

Modification: 01/12/2012 BK: 8782 PG: 113.

4. Based upon the records maintained in Affiant's system of record, the Current Mortgagee owns and holds said Mortgage as a result of sale and assignment thereof to the Current Mortgagee from a previous Mortgagee. The Current Mortgagee duly and properly acquired the Mortgage and has in its possession the Mortgage loan documentation pertaining to same.

5. That I have examined an abstract of the public records of said Town, and all known collateral documents in possession of the Affiant, and there appears to be a gap in the chain of assignments of said Mortgage from the Original Mortgagee to the Current Mortgagee. There is at least one assignment between U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE OF NRZ PASS-THROUGH TRUST X-B, and NEWREZ LLC F/K/A NEW PENN FINANCIAL LLC D/B/A SHELLPOINT MORTGAGE SERVICING and perhaps others within this gap that do not appear of public record.

6. That I have concluded that such missing assignment(s) either were never completed or, if completed, were lost, misplaced or destroyed before the same could be placed of record.

7. That, based on my review of available records, including, where applicable, the chain of endorsements on the Note, securitization documents, the collateral file, or other records of the loan, this loan was indeed assigned from U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE OF NRZ PASS-THROUGH TRUST X-B to NEWREZ LLC F/K/A NEW PENN FINANCIAL LLC D/B/A SHELLPOINT MORTGAGE SERVICING, and as such, an assignment should have been executed and recorded to indicate same.

8. That, after a diligent good faith attempt, I have concluded such assignment(s) cannot now be obtained. If a copy of one or more incomplete or otherwise unrecordable intervening assignment(s) are available, they are attached to this affidavit.

9. Based upon the records maintained in Affiant's system of record, the Current Mortgagee has not further assigned or transferred said Mortgage to any other party.

10. That this affidavit is made to induce the Recorder, Registrar or Clerk of said Town to accept for recording this instrument, executed and acknowledged by the Affiant, in place of said lost, misplaced or destroyed assignment(s).

11. The Current Mortgagee agrees to indemnify and hold harmless the Recorder, Registrar or Clerk of said Town from and against any cost or claims that may arise by reason of the acceptance and recording of this affidavit.

Dated on **APR 2 8 2022** (MM/DD/YYYY)
NEWREZ LLC F/K/A NEW PENN FINANCIAL LLC D/B/A SHELLPOINT MORTGAGE SERVICING

~~Kayla Stanton~~
~~Supervisor~~

STATE OF **SC** COUNTY OF GREENVILLE
SUBSCRIBED AND SWORN TO before me on **APR 2 8 2022** (MM/DD/YYYY).

Joseph Cooper
Notary Public - STATE OF **SC**
Commission expires:

> JOSEPH COOPER
> Notary Public, State of South Carolina
> My Commission Expires 08/10/2030

Document Prepared By: Cynthia Brock, NewRez LLC dba Shellpoint Mortgage Servicing, 75 Beattie Place, Suite 300, Greenville, SC 29601, Toll-free Phone: (800) 365-7107

> 04/29/2022 03:52:16 PM
> Michael B. Smart City Clerk
> City of New Haven

After Recordation Return To:
Shellpoint Mortgage Servicing
C/O Nationwide Title Clearing, LLC
2100 Alt. 19 North
Palm Harbor, FL 34683



VOL 10369PG 56
04/26/2022 02:23:12 PM
1 Pages
ASSIGNMENT

Michael B. Smart City Clerk

**Loan Number** ▮▮▮▮▮

## ASSIGNMENT OF MORTGAGE

**SEND ALL OTHER BORROWER OR LOAN RELATED CORRESPONDENCE TO: Shellpoint Mortgage Servicing, P.O. Box 10826, Greenville, SC 29603-0826, Toll-free Phone: (800) 365-7107**

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **NEWREZ LLC F/K/A NEW PENN FINANCIAL LLC D/B/A SHELLPOINT MORTGAGE SERVICING, WHOSE ADDRESS IS 1100 VIRGINIA DRIVE, FORT WASHINGTON, PA 19034, (ASSIGNOR)** by these presents does convey, grant, assign, transfer and set over the described Mortgage with all interest secured thereby, all liens, and any rights due or to become due thereon to **U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE OF THE NRZ PASS-THROUGH TRUST VIII, WHOSE ADDRESS IS C/O NEW RESIDENTIAL INVESTMENT CORP., 1345 AVENUE OF THE AMERICAS, ATTN: NRZ LOAN SURVEILLANCE, NEW YORK, NY 10105, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Mortgage bearing the date 06/12/2003, made by **MICHAEL LOTTO** to **WASHINGTON MUTUAL BANK, FA**, and recorded in the Land Records of the Town of **NEW HAVEN**, State of **Connecticut**, in **Vol 6460 and Page 148**, to which reference may be had.

Modification: 01/12/2012 BK: 8782 PG: 113.

**IN WITNESS WHEREOF, NEWREZ LLC F/K/A NEW PENN FINANCIAL LLC D/B/A SHELLPOINT MORTGAGE SERVICING** has hereunto set its hand **this 26th day of April in the year 2022.**

*Elliott*

**SIERRA ELLIOTT**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

Signed and Delivered in the presence of:

**SUSAN HICKS**
**WITNESS**

**JUSTIN BORKOWSKI**
**WITNESS**

STATE OF FLORIDA   COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization on this 26th day of April in the year 2022, by Sierra Elliott as VICE PRESIDENT of NEWREZ LLC F/K/A NEW PENN FINANCIAL LLC D/B/A SHELLPOINT MORTGAGE SERVICING, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

*Julie Martens*

**JULIE MARTENS**
**COMM EXPIRES: 5/22/2022**

JULIE MARTENS
Notary Public - State of Florida
Commission ▮▮▮▮▮
My Comm. Expires May 22, 2022
Bonded through National Notary Assn.

**Document Prepared By: Dave LaRose/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**

04/26/2022 02:23:12 PM
Michael B. Smart City Clerk
City of New Haven

**VOL 10521PG 240**
04/10/2023 01.00.23 PM
2 Pages
ASSIGNMENT

Michael B. Smart City Clerk

Prepared By and Return To:

Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(239) 351-2442

_____ | _____ Space above for Recorder's use _____

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR NRZ PASS-THROUGH TRUST VIII**, whose address is **60 LIVINGSTON AVENUE,** ▮▮▮▮ **ST. PAUL, MN 55107**. (ASSIGNOR), does hereby grant, assign and transfer to **U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR RCF 2 ACQUISITION TRUST**, whose address is **C/O SELENE FINANCE LP, 3501 OLYMPUS BLVD., SUITE 500, DALLAS, TX 75019.** (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: **6/12/2003**
Original Loan Amount: **$319,964.00**
Executed by (Borrower(s)): **MICHAEL LOTTO**
Original Lender: **WASHINGTON MUTUAL BANK, FA, A FEDERAL ASSOCIATION**
Filed of Record: In Mortgage Book/Liber/Volume **6460**, Page **148**
Document/Instrument No ▮▮▮▮ in the Recording District of **City of New Haven, CT**, Recorded on **6/23/2003**.

Property more commonly described as: **9 NORTH BANK STREET, NEW HAVEN, CONNECTICUT 06511**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: **12/5/2022**

**U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR NRZ PASS-THROUGH TRUST VIII, BY MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT**

By: **LISA V. HARRIS**
Title: **VICE PRESIDENT**

Witness Name: **MARIO REYES**

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of **FLORIDA**
County of **PINELLAS**

On **12/5/2022**, before me, **TRINH PHAM**, a Notary Public, personally appeared **LISA V. HARRIS, VICE PRESIDENT** of/for **MERIDIAN ASSET SERVICES, LLC, AS ATTORNEY-IN-FACT FOR U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR NRZ PASS-THROUGH TRUST VIII**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **FLORIDA** that the foregoing paragraph is true and correct. I further certify the foregoing instrument was acknowledged before me by means of ☑ physical presence or ☐ online notarization and that LISA V. HARRIS, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): **TRINH PHAM**
My commission expires: **08/08/2026**

TRINH PHAM
Notary Public
State of Florida
Comm███████
Expires 8/8/2026

04/10/2023  01:00:23 PM
Michael B. Smart City Clerk
City of New Haven



Loan number
Investor loan number

## LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement"), made this 5th day of August, 2016, between LOTTO, MICHAEL ("Borrower") and Seterus, Inc. ("Servicer") Loan Servicer for Federal National Mortgage Association ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated June 18, 2003 and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property," located at

     9 N BANK ST, NEW HAVEN CT 06511-0000

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.  As of September 01, 2016, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $282,265.13, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2.  Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance for the first five years at the yearly rate of 2.000% from August 01, 2016, and Borrower promises to pay monthly payments of principal and interest in the amount of $854.77 beginning on the 1st day of September, 2016. During the 6th year, interest will be charged at the yearly rate of 3.000% from August 01, 2021, and Borrower shall pay monthly payments of principal and interest in the amount of $993.05 beginning on the 1st day of September, 2021.

    During the 7th year and continuing thereafter until the Maturity Date (as hereinafter defined), interest will be charged at the yearly rate of 3.750%, from August 01, 2022, and Borrower shall pay monthly payments of principal and interest in the amount of $1,101.55 beginning on the 1st day of September, 2022 and shall continue the monthly payments thereafter on the same day of each succeeding month until principal and interest are paid in full. If on August 01, 2056, (the "Maturity Date"), Borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3.  In addition to the regularly scheduled payments that Borrower is required to pay under the Modification Agreement, Borrower agrees to pay Servicer an escrow payment in the amount of $1,262.33 for deposit into an escrow account for necessary payments to be made by Servicer, including but not limited to, payments for property taxes and insurance. As permitted by the Real Estate Settlement Procedures Act and other applicable law, Servicer may adjust the amount of the Escrow Payment. After notice of such adjustment, Borrower shall pay the adjusted Escrow Payment.
    (a) Each Escrow Payment shall be due on the same day(s) of the month as the regularly scheduled payments due under the Modification, commencing September 01, 2016.

(b) In the event Escrow Payments are not made and Servicer advances its own funds to make payments that should have been paid from Borrower's escrow account, such amounts will be added to Borrower's loan obligation under the Note.

(c) Any failure to make an Escrow Payment when due shall be deemed to be a default under the Note and Modification Agreement and upon Borrower's failure to pay the Escrow Payment, Servicer may exercise its rights under the Note and Modification Agreement.

(d) Unless an agreement is made in writing or applicable law requires interest to be paid on the escrow account payments held by Servicer, Servicer shall not be required to pay any interest or earnings on the payments held.

4. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

5. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

(a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

(b) all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

6. Borrower understands and agrees that:

(a) If Borrower has failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will be null and void.

(b) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(c) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the

Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(d) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(e) All administration and processing costs incurred by Servicer in connection with this Agreement, such as required notary fees, recordation fees, title costs and property valuation fees, shall be paid by the Servicer, unless otherwise stipulated.

(f) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(g) To execute other documents as may be reasonably necessary to correct an error (including but not limited to any inaccuracy, mistake or omission) if an error is detected after execution of this Agreement. In the event an error is detected, a corrected Agreement will be provided to Borrower, and this Agreement will be void and of no legal effect upon notice of such error. If Borrower elects not to sign any such corrected Agreement, the terms of the original Note and Security Instrument shall continue in full force and effect and such terms will not be modified by this Agreement.

7. Notwithstanding anything to the contrary contained in this Agreement, Borrower and Lender acknowledge the effect of a discharge in bankruptcy that has been granted to Borrower prior to the execution of this Agreement and that Lender may not pursue Borrower for personal liability. However, Borrower acknowledges that Lender retains certain rights, including but not limited to the right to foreclose its lien evidenced by the Security Instrument under appropriate circumstances and as allowed by applicable law. The parties agree that the consideration for this Agreement is Lender's forbearance from presently exercising its rights and pursuing its remedies under the Security Instrument as a result of Borrower's default thereunder. Nothing in this Agreement shall be construed to be an attempt to collect against Borrower personally or an attempt to revive personal liability.

8. Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow

Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a Lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

9. Any and all attorneys fees and legal costs incurred by Borrower or its representatives, with respect to this loan, will be the sole responsibility of the Borrower.

10. In the event of future default, Borrower authorizes Lender and Lender's successors and assigns, to share certain Borrower public and non-public personal information including, but not limited to (i) name, address, telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, and (v) payment history and information about Borrower's account balances and activity, with an authorized third party, which may include, but is not limited to, a counseling agency, state or local Housing Finance Agency, or similar entity that is assisting Borrower in connection with obtaining a foreclosure prevention alternative, including the Trial Period Plan to modify Borrower's loan ("Authorized Third Party").

Borrower understands and consents to Lender or Authorized Third Party, as well as Fannie Mae (the owner of Borrower's loan), disclosing such personal information and the terms of any relief or foreclosure prevention alternative, including the terms of the Trial Period Plan to modify Borrower's loan, to any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with the loan or any other mortgage loan secured by the Property on which Borrower is obligated.

Borrower consents to being contacted by Fannie Mae, Lender, or Authorized Third Party concerning mortgage assistance relating to Borrower's loan including the Trial Period Plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Authorized Third Party.

By checking this box, Borrower also consents to being contacted by text messaging. ☐

In Witness Whereof, the Servicer and I have executed this Agreement.

Angela Mueller   C

Seterus, Inc.  Authorized Signer

LOTTO, MICHAEL

AUG 2 9 2016

Date

8/23/2016

Date

Selene

P.O. Box 8619
Philadelphia, PA 19101-8619

Fax: (866) 926-5496
www.selenefinance.com

Hours of Operation
Monday through Thursday 8:00 am to 9:00 pm, CT; Friday 8:00
am to 5:00 pm, CT

MICHAEL J HABIB
Willcutts and Habib LLC
100 PEARL ST.STE FLR. 14
Hartford CT 06103

Re:   Account Number
      Mortgagor(s):

      Property Address:   9 N BANK ST
                          NEW HAVEN CT 06511

**Our records indicate the above referenced account has been impacted by a bankruptcy filing.  If a mortgagor has received a
discharge in bankruptcy, Selene fully acknowledges that such mortgagor has no personal liability for the debt and is not
attempting to collect the debt from that mortgagor personally.  If the account is impacted by an active bankruptcy case,
Selene fully acknowledges the automatic stay and is not attempting to collect the debt.   THIS NOTICE IS FOR INFORMATIONAL
PURPOSES ONLY.**

Selene Finance LP is a debt collector attempting to collect a debt and any information obtained will be used for that
purpose.
Please note, however, that if you are in bankruptcy or received a bankruptcy discharge of this debt, this
communication is not an attempt to collect the debt against you personally.

**For Servicemembers and their Dependents:** The Federal Servicemembers Civil Relief Act and certain state laws
provide important protections for you, including, under most circumstances, a prohibition on foreclosure during and
twelve months after the servicemember's active duty service.  Selene will not foreclose on the property of a
servicemember or his or her dependent during that time, except pursuant to a court order.  You also may be entitled to
other protections under these laws, including interest rate and fee relief. Please contact us to learn more about your
rights.



**ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT - BANKRUPTCY PROOF OF CLAIM**

**selene**

P.O. Box 8619
Philadelphia, PA 19101-8619

**Online Information:** www.selenefinance.com
**Email:** customerservice@selenefinance.com

**Hours Of Operation:** Monday through Thursday 8:00 am to 9:00 pm, CT; Friday 8:00 am to 5:00 pm, CT
**Phone:** (877) 735-3637
**Hearing Impaired:** Call 711 or (800) 735-2989
**Fax:** (866) 926-5496

**Correspondence:**
P.O. Box 8619
Philadelphia, PA 19101-8619

abib LLC
100 PEARL ST.STE FLR. 14
Hartford CT 06103

Analysis Date: 04/08/25
Loan Number:
Borrower Name: MICHAEL LOTTO
Property Address: 9 N BANK ST
NEW HAVEN CT 06511

Each year Selene Finance LP reviews your escrow account to determine your new monthly escrow payment. As you may know, we collect funds and hold them in your escrow account to pay your property taxes, flood insurance (if required), homeowner's insurance premiums and mortgage insurance premiums on your behalf. Below are answers to the most commonly asked questions we receive about the annual escrow analysis and the details related to your account.

### 1. What is the amount of my new monthly payment starting May 01, 2025?

| Payment Items | Previous Payment | New Post-Petition Payment | Difference |
|---|---|---|---|
| Principal and Interest | $1,101.55 | $1,101.55 | $0.00 |
| Escrow | $1,829.17 | $1,853.23 | $24.06 |
| Surplus+/Shortage+ | $0.00 | $0.00 | $0.00 |
| **Total Payment** | **$2,930.72** | **$2,954.78** | **$24.06** |

- **Note:** If you currently use a third party bill pay service to make automatic payments, please update the amount scheduled to reflect the new payment amount listed above. If you are currently set up on automatic payments with Selene Finance LP, this new amount will automatically take effect with your May payment.

### 2. What are the most common reasons that my escrow payment may change from year to year?

**A. Increases or Decreases in Amounts Billed** – The amounts we collect each month to be held in your escrow account may change based on increases or decreases to your property taxes, mortgage insurance premiums, or homeowner's insurance premiums. The information below compares the amounts Selene Finance LP expected to pay for each item this past year from your escrow account to the actual amounts that were paid or will be due. The difference column reflects the increase or decrease for each escrowed item.

| Escrowed Item | Anticipated Amounts Due | Actual Amounts Paid or Due | Difference |
|---|---|---|---|
| CITY 1ST INS | $8,598.40 | $8,598.40 | $0.00 |
| CITY 2ND INS | $8,308.06 | $8,598.40 | $290.34 |
| HOMEOWNERS I | $5,043.60 | $5,041.92 | -$1.68 |
| **Total Annual Escrow Payments** | **$21,950.06** | **$22,238.72** | **$288.66** |
| **Monthly Escrow Payments** | **$1,829.17** | **$1,853.23** | **$24.06** |

| | |
|---|---|
| POC Escrow Balance+/Escrow Advance Balance- | -$122,077.71 |
| POC Required Balance | $9,438.69 |
| POC Overage+/Shortage- | -$9,858.85 |
| Contractual Overage+/Shortage- | -$53.50 |
| Contractual Escrow Amounts Due | $131,883.06 |
| POC Intervening Disbursements | -$420.16 |

**B. Contractual Escrow Shortage** – To determine if there will be a shortage or surplus in your escrow account, we subtract the **Minimum Required Starting Balance** from the **Anticipated Contractual Escrow Account Balance**. The Minimum Required Starting Balance is from the beginning of the upcoming escrow period, as shown on the Contractual and Post-Petition Account Projections on the following page. The Anticipated Contractual Escrow Account Balance is from the end of your current escrow period, as shown in the Contractual Activity History on the following page. Your ending balance from the last month of the account history **(Anticipated Contractual Escrow Account Balance)** is $9,385.19. Your starting balance **(Minimum Required Starting Balance)** according to this analysis should be $9,438.69. This means you have a shortage of -$53.50.

| Anticipated Contractual Escrow Account Balance | | Minimum Required Starting Balance | | Shortage |
|---|---|---|---|---|
| $9,385.19 | minus | $9,438.69 | equals | ($53.50) |

Our records indicate a petition for Bankruptcy was filed on 04/04/2025. Pursuant to that petition, we have filed a Proof of Claim with the bankruptcy court. Any deficiency and/or Shortage listed under the Proof of Claim section will be excluded from your future scheduled escrow payment, as these amounts will be added to your pre-petition arrearage and collected in your bankruptcy plan payment.

Loan Number
Name: MICH
Willcu

Shortage Amount: $53.50

### ESCROW SHORTAGE SUMMARY

The shortage is being retained in your account.

If you have questions about this shortage amount, please contact us at (877) 735-3637



INTERVENING DISBURSEMENTS

| Month | Description | Payments From Escrow | Projected Escrow Balance (Post-Petition) |
|---|---|---|---|
| April 25 | HOMEOWNERS I | $420.16 | -$122,497.87 |

### ESCROW ACCOUNT PROJECTIONS AND ACTIVITY HISTORY

Contractual and Post-Petition Account Projections shows a month by month estimate of the activity we anticipate will occur in your escrow account over the next 12 months. This table shows the projected low balance point that is used to calculate an escrow surplus or shortage.

CONTRACTUAL AND POST-PETITION ACCOUNT PROJECTIONS

| Month | Description | Payments Estimate | Disbursements Estimate | Projected Escrow Balance Contractual | Post-Petition | Balance Required In Escrow |
|---|---|---|---|---|---|---|
| | Beginning Balance | | | $9,385.19 | -$420.16 | $9,438.69 |
| May 25 | HOMEOWNERS I | $1,853.23 | $420.16 | $10,818.26 | $1,012.91 | $10,871.76 |
| June 25 | HOMEOWNERS I | $1,853.23 | $420.16 | $12,251.33 | $2,445.98 | $12,304.83 |
| July 25 | CITY 1ST INS | $1,853.23 | $8,598.40 | $5,506.16 | -$4,299.19 | $5,559.66 |
| July 25 | HOMEOWNERS I | $0.00 | $420.16 | $5,086.00 | -$4,719.35 | $5,139.50 |
| August 25 | HOMEOWNERS I | $1,853.23 | $420.16 | $6,519.07 | -$3,286.28 | $6,572.57 |
| September 25 | HOMEOWNERS I | $1,853.23 | $420.16 | $7,952.14 | -$1,853.21 | $8,005.64 |
| October 25 | HOMEOWNERS I | $1,853.23 | $420.16 | $9,385.21 | -$420.14 | $9,438.71 |
| November 25 | HOMEOWNERS I | $1,853.23 | $420.16 | $10,818.28 | $1,012.93 | $10,871.78 |
| December 25 | CITY 2ND INS | $1,853.23 | $8,598.40 | $4,073.11 | -$5,732.24 | $4,126.61 |
| December 25 | HOMEOWNERS I | $0.00 | $420.16 | $3,652.95 | -$6,152.40 | $3,706.45 ** |
| January 26 | HOMEOWNERS I | $1,853.23 | $420.16 | $5,086.02 | -$4,719.30 | $5,139.52 |
| February 26 | HOMEOWNERS I | $1,853.23 | $420.16 | $6,519.09 | -$3,286.76 | $6,577.59 |
| March 26 | HOMEOWNERS I | $1,853.23 | $420.16 | $7,952.16 | -$1,853.19 | $8,005.66 |
| April 26 | HOMEOWNERS I | $1,853.23 | $420.16 | $9,385.23 | -$420.12 | $9,438.73 |
| Totals | | $22,238.76 | $22,238.72 | | | |

\** Low Balance used to determine escrow surplus or shortage.

Federal law (RESPA) allows lenders to maintain a two month cushion in an escrow account. A lower cushion may be required under state law. The cushion helps minimize the amount your escrow account could be overdrawn if tax or insurance payments increase.

Contractual Escrow Activity History itemizes your actual escrow account transactions since your previous analysis statement or initial disclosure. Last year's estimates are next to the actual activity. An asterisk (*) indicates a difference between the estimated and actual payments and disbursements. The letter 'E' beside an amount indicates that the payment or disbursement has not yet occurred, but is estimated to occur as shown.

ESCROW PRE-PROJECTION CONTRACTUAL HISTORY

| Month | Description | Deposits to Escrow | Payments From Escrow |
|---|---|---|---|
| May 24 | HOMEOWNERS I | $0.00 | $420.30 |
| June 24 | HOMEOWNERS I | $0.00 | $420.30 |
| July 24 | CITY 1ST INS | $0.00 | $8,598.40 |
| July 24 | HOMEOWNERS I | $0.00 | $420.30 |
| August 24 | HOMEOWNERS I | $0.00 | $420.30 |

CONTRACTUAL ESCROW ACTIVITY HISTORY

| Month | Description | Payments Estimate | Actual | Disbursements Estimate | Actual | Projected Escrow Balance | Actual Escrow Balance |
|---|---|---|---|---|---|---|---|
| | Beginning Balance | | | | | $6,330.92 | -$110,538.05 |
| September 24 | HOMEOWNERS I | $1,829.17 | * | $420.30 | $420.30 | $7,739.79 | -$110,958.35 |
| October 24 | HOMEOWNERS I | $1,829.17 | * | $420.30 | $420.16 * | $9,148.66 | -$111,378.51 |
| November 24 | HOMEOWNERS I | $1,829.17 | * | $420.30 | $420.16 * | $10,557.53 | -$111,798.67 |
| December 24 | CITY 2ND INS | $1,829.17 | * | $8,308.06 | $8,598.40 * | $4,078.64 | -$120,397.07 |
| December 24 | HOMEOWNERS I | | | $420.30 | $420.16 * | $3,658.34 | -$120,817.23 |
| January 25 | HOMEOWNERS I | $1,829.17 | * | $420.30 | $420.16 * | $5,067.21 | -$121,237.39 |
| February 25 | HOMEOWNERS I | $1,829.17 | * | $420.30 | $420.16 * | $6,476.08 | -$121,657.55 |
| March 25 | HOMEOWNERS I | $1,829.17 | * | $420.30 | $420.16 * | $7,884.95 | -$122,077.71 |
| April 25 | HOMEOWNERS I | $1,829.17 | $131,883.06 E | $420.30 | $420.16 E | $9,293.82 | $9,385.19 |
| Totals | | $14,633.36 | $131,883.06 | $11,670.46 | $11,959.82 | | |

If you have questions about your escrow analysis statement please contact our Customer Service Department at (877) 735-3637.

If you have an active bankruptcy or have received a bankruptcy discharge, we are sending this for informational, legal, or compliance purposes only. We are not trying to collect against you personally. If you have questions about this communication or your obligation to pay, please contact your attorney.